Maranda Fritz for Appellants. May I? Yes, please. Approach. Good morning, Your Honors. May it please the Court, my name is Maranda Fritz. I represent Appellants Vincent Messina and International Market Ventures. First, I want to thank the Court for its courtesy due to my delay. But far more important, I'd like to reserve three minutes for rebuttal. Okay. I'll try and help you. I'll let you know when you're getting down to three minutes. Okay. Thank you very much. You're welcome. Far more important than any of that is I think that this Court in this case is presented with an example of a relief defendant proceeding run completely amok. This case just crystallizes what can go wrong in a relief defendant action that this Court knows all too well is intended for a very limited purpose. Back in Colella, this Court really took on the issue of whether the SEC would be permitted to use a relief defendant proceeding to go after individuals or entities other than mere custodians. In the Colella case... Messina's and IMV, well at least the Messina's individually, were never charged by the SEC as parties, were they? That's absolutely true. Okay. There was never a claim of any kind that I knew to defend. So if they're not parties but they are holding funds that the SEC alleges to be the proceeds of illegal activity, then why wouldn't they be proper subjects of a relief defendant proceeding? Because the reasoning of this Court from Colella through Ross, through the WeCourt case that involved attorneys, through founding partners that involved people who got loans, all of those cases have a very consistent theme which is in a truncated relief defendant process, one cannot properly adjudicate a claim to property. And so if one is asserting a claim, that has to be adjudicated either through an SEC proceeding, which of course they could have brought, or oftentimes through a trustee proceeding. Why? Because at that point, I know what I am accused of. I know what... They weren't accused of anything. I mean, that was the SEC's theory. They were just holding the money, according to the SEC. And to contest that, there was a 12B1 hearing, a factual hearing, where each side could argue about whether they were just holding the money or whether something else was going on. And the Court had a hearing and looked at documents and decided that they were just holding the money. And I don't understand you to be really arguing that anything was wrong with that fact-finding, that proceeding. What was wrong with that proceeding to figure out whether they were just holding the money? Here's what happened. I ended up in front of a freight train. The complaint was filed in May. I filed my motion to dismiss in June. It was my view that under this Court's reasoning, and again, if the relief defendant process can be expanded as it was in this case, there are a lot more individuals like me that are going to go through what I went through. Well, expanded. I mean, I think you don't like the Court's determination that they were just holding the money, right? But in terms of a fact-finding process to determine whether the Court believed they were just holding the money or not, I haven't understood what your problem is with how the Court proceeded in answering that question. The Court in Colello laid out what's wrong with relief defendant proceedings. And this case was an example. I did not know of any claim or charge that was being asserted because there was no claim. I ended up, after filing the motion in May, basically being told that that motion was denied but that there were disputed issues that would be resolved. Now, my view is, under this Court's prior holdings, once you find that there are disputed issues of fact regarding a claim... Isn't it a fact that this was just a big sham to try and conceal this money from the SEC penalty? Absolutely not. What happened, and again, what I was defending against, what I ended up in a hearing about was not elements of a cause of action. I was trying to defend against this concept of a sham. What does that... And how does one defend that? I'll tell you how I defended it. In every single way, the facts of this demonstrated non-sham. But that's not... The Court didn't believe your client. I mean, so your client came and said this was a real loan, and the Court found your client not to be credible and found that it was not a real loan, that it was a sham. And all of the steps of that 12B1 determination, you still haven't said... I mean, it sounds like you're saying you didn't understand that's what it was going to be about. But in the motion to dismiss ruling, the Court said we still have these fact disputes about whether it was a real loan, and so I'm going to have a hearing, and then that's what the hearing was. So why... What was confusing about that? First of all, I think that this Court's... I think this is really going to be a departure if this Court sustains what happened here. I think it is a departure. Let me ask a little bit about the procedural process. As I understand it, you had three months to conduct discovery, and then the Court held a two-day adversarial evidentiary proceeding at which witnesses testified on direct and cross-examination, and both sides admitted exhibits, quite a few of them, which the District Court admitted into evidence. And at the conclusion of that hearing, the District Court limited its findings to whether or not your clients were, in fact, in possession of the proceeds of activity and whether or So let me ask you this. What additional process do you feel relief defendants are due that the District Court did not afford in this case? First of all, just in terms of the timing, the judge issued his decision on July 10th, saying the hearing would go forward the first week of September. That gave me, given the fact that I had no decision at that point, and that the discovery cutoff would be March of the following year, that gave me weeks... The discovery cutoff in the SEC's, I'll call it, principal case against the named defendants of which your clients were not, right? But the only discovery cutoff that, in my view, was applicable to this entire case. Well, if the Court told you on July 10th, we're going to hold an evidentiary hearing in this matter in September, are you saying the Court should have said, okay, and I'm going to give you a discovery cutoff date of September 1 or August 31st? No. I don't understand. And I'll walk you through what actually happened. That decision comes down on July 10th. I then have a period of literally three to four weeks to try to get whatever discovery I can. And I did the best I could. Understand. I was taking depositions... What information were you not able to get that you thought you needed by September for the hearing? All of the analysis with respect to the transfers to 2Pacific. My client received money from a company called 2Pacific. In order for that, for the disgorgement... But the disgorgement wasn't decided in September. So the only thing decided in September was whether the loan was a real loan or not. What other information did you need about whether the loan was a valid loan that you didn't yet get by September? What I needed at that point was just additional documents. Additional documents from the receiver to try to get a picture of the transaction. What I had... Are you saying that you wanted the final forensic report from the receiver? Is that what you're complaining about? No. By the time the judge issued this decision, lookit, he split. The SEC then filed a motion for judgment. Not characterized... Can we just... In September... The huge decision, I think, for you is are you a relief defendant or not? Then we've got the disgorgement later. Then you may have... We can talk about that. Right. But just as to whether you're a relief defendant because the loan was not a valid loan, that's what the district court found. You are trying to say that you didn't have the information you needed in September to dispute that, but what information were you lacking? When we went into the hearing on September 5th, and I'm sure you've reviewed the transcript, we didn't even know what the hearing was. I don't know if you reviewed it, but the first thing... I did review it, and I thought that the decision from July explained what that hearing would be about. The first part of it is both sides were taking completely different positions in terms of what was going to be litigated. Okay, well, so what was litigated was whether the loan was valid. So what information were you lacking as to whether the loan was a valid loan in September? At that point, I... The only two people that had information regarding the loan were my client and Ming Xu. Ming Xu was subject to a cooperation agreement. And so at that point, I did my best to present all the evidence with respect to the loan. I presented Mr. Messina. I presented Gary Messina. Now, at the end of the day, there's no doubt Judge Walker absolutely thought that this was a sham, but what I... But your client, Mr. Vincent Messina, was not credible. The court simply did not believe his testimony. But his testimony... And that is a determination that we cannot overturn on appeal unless we say that it was clearly erroneous. And that is why I believe the only issue before this Court is the question that was presented in Colello. What is meant by whether or not an individual like my client can assert a legitimate claim? Because I will tell you... The court found on the basis of an adverse credibility determination and this one-paragraph quote-unquote loan agreement that A, your client was not credible, and B, the loan was a sham and that it was essentially entered into to hide assets. I understand. But my view is that freight train should never have gotten there. And let me just tell you why. Because this is the issue that I think is before the Court. There are two different phrases in the SEC brief versus mine in terms of what Colello said. In my view, Colello says, if you articulate a legitimate claim, then you cannot be dragged through. But by legitimate, you, I think, mean colorable? Exactly. I mean something that is colorable that would be valid if it were. So usually... So this goes to jurisdiction, right? Our court has said that district courts have jurisdiction over relief defendants if the relief defendants are just holding the money for someone else, if they don't have an ownership interest in the money. Correct. We can usually decide jurisdictional issues in 12b1 hearings if there's a fact dispute. So here there was a fact dispute. Was the loan real or not? That fact dispute, why can't it be determined in a 12b1 hearing to figure out whether the court has jurisdiction over a relief defendant or not? You're saying it should just mean colorable so you can't have the hearing at all, but we don't treat other jurisdictional issues. That way we have a hearing and we figure out whether it's true or not. Because relief defendants are inevitably going to be hit by these freight trains. You're not saying the SEC... But you haven't explained yet why it's an unfair freight train. You haven't said anything that you didn't know yet about the loan that would allow us to determine as a matter of fact whether the loan was real or not. In September, the judge had a hearing to figure out whether they really had a property interest in the loan or not. And he said they don't. And so far I haven't heard you say what discovery you needed, what other information you needed to contest that. The frustration I'm having is the government is very clear that what they want you to hold is that the purpose of a relief defendant proceeding is resolving the claim to the property. What I'm trying to suggest is far more important than whether you think my client is a good guy or a bad guy. This proceeding was a freight train, and I have litigated against the... You're calling it a freight train, but what was wrong with the factual process of determining whether the loan was valid or not? Can you tell me what process you would have had if we called it something else? I mean, he had a whole hearing with witnesses and evidence about this loan. What was wrong with that hearing? I needed... Another two minutes, counsel. All right. I sought and needed an opportunity to depose Ming Hsu and to determine what are the documents and what is the evidence, and I tried. He fled the country, didn't he? Not at that point. He was fully cooperating with the SEC. Did you tell the court that I can't yet have this hearing because I haven't been able to locate the witness? Or what did you say to the court about not having the hearing until you found this deposition? I objected many, many times to what I felt was a rush through this proceeding. But did you say specifically there's this thing that I need that I haven't yet had? Can we have a continuance until I can do it? I believe so. I can double-check. I certainly believe so. Why did you do that? May it please the court, my name is Daniel Staroselsky. I represent the Securities and Exchange Commission. The district court here acted within its discretion in requiring the relief defendants to disgorge money that was never theirs to begin with. This flows from two facts. Number one, the $5 million transfer from Mr. Zhu to Mr. Messina was not a valid loan. It was a sham transaction designed to hide money from the government. And second, the district court correctly held that the undisputed evidence showed that the only significant source of funds for Mr. Zhu to make that transfer came from the unregistered and fraudulent securities offering that Mr. Zhu orchestrated using the world capital market entities. The second part about whether there was any dispute about whether the money was ill-gotten funds, I think you've agreed that should be viewed as a summary judgment determination. Is that correct? Yes, Your Honor. So you started your argument saying it was not an abuse of discretion, but it seems to me at least as to that second part that we're reviewing summary judgment and we do that de novo. I'm not sure why you started with abuse of discretion. Well, I know some of our case law talks about abuse of discretion, but I'm kind of not sure that that language really applies in this situation where it seems like everyone is agreeing that was really a summary judgment determination. Well, because the ultimate decision whether to award disgorgement is a discretionary decision. Does it follow automatically, though, from the summary judgment? I mean, basically, once you figured out that they're just holding the money, that's the first thing, the 12B1 issue. Once we're in a relief defendant proceeding and then we have the summary judgment determination about whether they're ill-gotten funds, what else is there? What's the next thing that needs to be asked? In this case, there was not anything else. All I'm saying is that it's a discretionary decision whether to award disgorgement, and that's true whether it's on summary judgment or after trial. So, I mean, could this judge have said, OK, I agree it was ill-gotten funds, I'm not going to do it? And if so, like, what would you have said to us? I think on the facts of this case, Your Honor, if that's all that the judge said, I think that would have been an abuse of discretion. But so I think that's what the argument would have been. Counsel, let me back you up. Yes. Because I'm a little puzzled as Judge Freeland is by your approach here. It seems to me under Colello that the purpose of the hearing was to require the SEC to establish the two elements that we laid out in that case that must be shown. And I'm reading from 139F3rd at 677. And that is, first, the SEC must show that the nominal defendant has received ill-gotten funds, and secondly, that he does not have a legitimate claim to those funds. Right. And isn't that what the district court decided in September and then left the question of the amount of the disgorgement later? No, Your Honor. So what the district court decided in September was solely the issue of whether the transfer, this non-recourse loan that Mr. Messina testified he has no legal obligation to repay, was a valid loan or was a sham transaction. And the reason we got there, and I think this is responsive to some of the procedural arguments that my friend on the other side has raised, is this was not news to anyone. Mr. Messina, even when Mr. Xu asked for the money to be wired back, said, this is in a chat message on March 27th, I believe, I am willing to test the SEC position in the courts. Then, a few days later, after the TRO and asset freeze issued, we simply asked for the money back. And another lawyer to whom the money went, he gave it back. Mr. Messina did not. He went to extraordinary lengths to dissipate the assets to his friends and associates. Then, in April 24th, the district court held a hearing on our motion for asset freeze. And the district court said at that hearing, I think the key issue in this case is whether this is a valid loan. I don't think this is a valid loan, but I'm going to authorize both parties to engage in expedited discovery on that issue. So that's April 24th. We file our complaint May 7th. The hearing doesn't take place until September. By that point, more than four months have passed. There's ample opportunity to take discovery. So you filed a complaint. They filed a motion to dismiss for lack of jurisdiction. I think the district court caused some confusion by denying that motion, but then later having the hearing on that motion. Do you agree with that characterization of what happened? Because, I mean, the district court took their motion to dismiss for lack of jurisdiction, said it was denied, but then also said, but I need to have a hearing on the fact disputes related to this question. But I think, Your Honor, it was appropriate for the reasons that Your Honor identified earlier, which is if you file a 12B1 motion, and really it was the appellants who were pressing this issue, they file a 12B1 motion, and if you do that, then it's appropriate to have a hearing. It is, but you don't deny it first. I mean, that's where the confusion comes, I think, a bit. Perhaps, perhaps. But the court says, I'm going to have a hearing. I agree with Judge Friedland. Was the denial, though, a response to the argument that, as Judge Friedland articulated it earlier, merely claiming that you have a legitimate title to the funds is colorable enough to defeat jurisdiction? Is that what the district court was responding to? Right, right, absolutely. That was the ruling. It was in response to that argument. And what the district court held, and this is consistent with all of the relief defendant case law, is you have a hearing to decide whether this money that is in the relief defendant's possession, whether the relief defendant has a legitimate claim to it or not. And the courts have subject matter jurisdiction to decide that. And as we point out in our brief, sometimes we lose, sometimes we win, but the court has jurisdiction to decide whether we're right or wrong. Well, courts always have jurisdiction to figure out their jurisdiction, right? Whether they have jurisdiction over relief defendants depends on whether the relief defendant has a legitimate claim to the money or not. Isn't that right, as a way to look at it? I think the case law is a little bit confusing. I mean, to me, it's a merits issue, not a subject matter jurisdiction question. But regardless, I mean, here the relief defendants were the ones pressing this issue, and so it was decided on 12b-1. We can ask Ms. Ritz about this when she gets back up, but I thought I understood her argument to be that if the party holding the funds responds to your relief defendant motion by saying, I have a legitimate entitlement to this money, that you cannot then go forward with a relief defendant action against them. You're going to have to file some sort of an ancillary proceeding. I'm not sure what it would be denominated because you wouldn't be naming them as parties, I guess, unless your theory is they're aiding and abetting the securities fraud violations. Right. But it would almost be in the nature of an interpleader action if it were a bank that was holding on to the funds. I mean, I think I understand. Is that how you understand her argument? I'm going to give her a chance to answer my question. Sure. So the way I understand the argument is that if we file our relief defendant complaint, as we did here, and the relief defendant says, no, I do have a claim to these assets, I performed services in response, then that's it. You have to dismiss the case, and you can't have a factual hearing about that. And that's just contrary to relief defendant case law. All of the relief defendant cases that I'm aware of, the cases we cite in our brief, at least, they come up because there is a factual dispute, because people say, no, no, no. But I don't know that that's true. So, I mean, maybe we'll agree with you that it doesn't make sense to say that a colorable argument is enough and that what really needs to be done is what was done here, a fact-finding to determine whether it's real, whether the claim to the money is real or not. But your claim that the cases resolve this, I don't know how that could be true, because Colello, there was no evidence, because the guy took the Fifth Amendment. There was no evidence on their side, no fact dispute. There was nothing. And then Ross is totally on the other side. And Ross, there was, you know, it's far on the other end of the spectrum. So our court has these two cases that are on the ends of the spectrum, and I don't know where in the middle we have a case that talks about what to do about whether it's when it's colorable or not colorable or you need a fact-finding. What case from the Ninth Circuit are you pointing to that has a fact-finding about this? Well, in Colello, there wasn't a fact-finding. It was resolved in summary judgment, because there were no disputes of material fact. I mean, I guess my best case is not Colello. My best case is Kimberlin Creek Ranch from the Fourth Circuit that rejected this exact argument on a P.I. motion. And then we cite the Walsh case from the Second Circuit, and that's actually a really difficult case. Those cases do support you, but we don't have a Ninth Circuit case that says how the Ninth Circuit defines legitimate, do we? Colello says at the end that you look to whether there's legitimate right to the money, and the court found that there was no dispute of material fact that Colello didn't have such a right. So I guess I interpret that case to support us, but, I mean, I think under any plausible standard, we win here. I'm sorry, what was the Second Circuit case? It's Walsh. I believe it's CFTC against Walsh. And that's a very interesting case, because there's a whole certification process to get an opinion from the highest court in New York regarding marital property and what people's rights in that are. Oh, we're very familiar with certifying questions in the state court. I'm sure you are. So I think that that's all. Well, let me ask you, is it the commission's position that where a relief defendant, in response to a relief defendant complaint, raises a claim that it has a legitimate entitlement to the money, that due process is satisfied if there is an opportunity for discovery and an evidentiary hearing at which that issue is resolved? I mean, I hesitate a little bit to speak in the abstract about due process. Well, then I'll make my hypothetical directed to the facts of this case. Sure. Do you agree that due process was satisfied based on the procedure that the district court followed here? Absolutely, Your Honor. In ordering expedited discovery and a contested hearing at which witnesses testified and exhibits were introduced and admitted into evidence? Absolutely, Your Honor. I mean, in this respect, it's really the opposite of Ross, Your Honor, because the relief defendants, they're named in the complaint. They file an answer. Or, sorry, they move to dismiss. They're authorized to take expedited discovery. They're parties. They have an opportunity to litigate the case. I don't know what more due process would require. Why wasn't it an abuse of discretion? So I think you think there was no abuse of discretion here, but it seems that the district court considered the summary judgment motion before the receiver's report was complete. Why wasn't that problematic just procedurally? It wasn't problematic procedurally because the facts that we were relying on, we didn't need the receiver's forensic report for those facts. And by the time that when we moved for the summary judgment, again, eight months had passed since both sides were authorized to take expedited discovery. And the relief defendants, they cross-examined the receiver at that September hearing. They had every opportunity. But the September hearing was only about whether the loan was valid, right? No, I understand. That's true. That's true. But nothing changed since the – But the second determination was about whether the funds were ill gotten. That's a different question than the September hearing. So why didn't they need the receiver's report to figure out where the funds were coming from and whether they were domestic versus foreign? Why wasn't – why shouldn't the district court have waited to get that information before having this summary judgment determination? And I think it would have been within the district court's discretion to wait. I don't think it was an abuse of discretion not to wait. And the court explained why, and that is they had opportunity even after that hearing. And by the way, everybody knew that after that hearing we would be filing a motion, assuming that we went on whether the loan was a valid issue. They had every opportunity to seek discovery from the receiver. If they thought it inadequate, they could have filed a motion to compel. They didn't avail themselves of any of that. And instead, four days before the close of even assuming close of discovery refers to the release of an action, four days before that, they file this motion for continuance. And that's just something within the district court's discretion. Were any of the receivers' interim forensic reports marked as exhibits and admitted into evidence at the hearing? I'm not sure that they were marked as exhibits and available at the hearing. They're certainly available. Available to counsel for the relief defendants? Yeah, yeah. I mean, they're public documents. They're filed on PACER. They're available. Did the receiver testify at the evidentiary hearing? Yes, the receiver testified at the evidentiary hearing. But the district court did have evidence before it as to the source of the funds. Right, and the evidence. That's a question. There was a question mark there, yes or no. Yes, Your Honor. Okay. Yes, and that evidence is undisputed. There's no genuine dispute of material fact with respect to that evidence. And what that evidence shows is that this was one pot of money and the violating defendants, excuse me, Mr. Zhu and World Capital Market, they had no legitimate source of business other than raising funds from investors, no significant source of business. Were some of those investors overseas? Yes, some of those investors were overseas. So was there tracing to figure out whether this $5 million came from overseas? No, Your Honor, and that's not required. When there's a situation such as this, when there's commingling, we're not required to try to break out within that one pot of money which amounts went to the relief defendants. So if you knew that, say, the pot of money had $100 million in it and you knew that half of the $50 million came from overseas and $50 million came from domestic, could you get $100 million back? Because you could just count all of it over and over as from the right $50 million? Could we receive it? No, no. But if, so suppose the relief defendants are absolutely right as to what the solely domestic liability is, that's $17 million. That's bigger than the 5 that was transferred. Right, but so could you get 5 from 10 people, though? Get 50 on the theory that, well, 5 is less than 17, so I'll get 50? No, no. So how do we know that you haven't done that in this case? Well, there's just no basis for that, Your Honor. We haven't. Without tracing, how do we know that the 5 million that you've gotten comes from within the 17 and that you haven't gotten it multiple times? Your Honor, we haven't gotten it. I'm just struggling a little bit answering. Isn't the answer, does it matter? As long as you can show that more than 5 million were raised by domestic investors in the Ponzi scheme, the fact that Two Pacific transferred 5 million out of Ponzi scheme funds, it doesn't really matter whether the 5 million can be traced to Hong Kong investors or to U.S.-based investors. That's exactly what I'm saying, Your Honor, and I was trying to say that. So you're saying it doesn't matter if the 5 million came from foreign sources or domestic sources? When it's, because you can't. As long as more than 5 million was raised. Right, when it's commingled like this, yes. But, okay, so 17 million were raised domestically, came from domestic sources, and a lot more came from foreign sources. So you're saying 5 million is less than 17 million. Can you say that in four different cases and collect 20 million on the theory that 5 is less than 17? No, we can't collect more than the amount of unjust enrichment. But we haven't done that here. And we know that just because there weren't other relief defendants in this case? No, there are other relief defendants. And we know in this record how much money you collected from them? Well, so there is in the record, or at least in the record in the district court, how much the receiver has collected. But those are two distinct concepts because the receiver is there to unwind the entities. And the receiver isn't, you know, the receiver has trade creditors, the receiver has creditors here and abroad. So the receiver's recovery isn't limited in the same way that ours would be. Is the receiver making refunds to both foreign and domestic investors? I believe so, Your Honor, but I'm not confident. The receiver recently filed a motion regarding the claims process where that's laid out, and I believe that's true, but I'm not sure. Okay, all right. Do you have anything further? You're over time. I don't, unless the Court has any further questions. Anything further? I think not. Thank you very much. Thank you. Okay. So I'm going to try to address two questions that I've heard. Okay. But the first one is I am as stubborn as a mule, as you can probably tell. And I do believe that. It's okay to be stubborn as long as you've got a good legal argument to back it up. I understand that. And so now I'm going straight back to Ross, which is what I have at page 25 of my brief. In Ross, the employee said, I got this money legitimately. The SEC obviously disagreed. If what we're talking about today were the rule, then that would have gone, could have gone through a truncated proceeding, and let's just figure it out. But what does the circuit say? At that point, he had, he, the relief defendant, has presumptive title to the commissions. Only a violation of law can result in disgorgement, and adjudication of a claim violation cannot occur in a summary. The relief defendant was accused of an actual violation. Your client wasn't. So that's a big distinction, isn't it? My client ultimately was accused of all kinds of violations. But he was never named as a defendant in violation of the Securities and Exchange Act. Which brings me to the other question. What was so wrong? Answer that question. He was never named or accused by the SEC in a civil action for SEC violation. That's correct. I never had anything to shoot at. And so the hearing ended up being, is this legitimate? I don't know the elements of legitimate. Is this a sham? Legitimate means that you provided goods and services which are recognized as lawful. I mean, the problem with Ross, as I understand it, was he was claiming entitlement to commissions from the sale of securities that the government was alleging were made in violation of the SEC laws. So he was saying, I'm entitled to commissions. Their position was no. I mean, it's almost akin to the drug dealer who says, well, I might have made a million dollars off the sale of these narcotics, but I have legitimate business expenses. I have to pay off and bribe officials. I have to hire hit men. I have to kill informants. And that all costs money. I should be able to deduct those as business expenses before you hit me with the tax bill. That's one issue. And the Ninth Circuit said you cannot resolve that. But the legitimate issue has to do with whether the loan was legitimate or not, right? In this particular case. But what we ended up being accused of is all kinds of culpability. And I was trying to go back to answer your question. What was it that I wanted that I didn't have when I walked into that hearing in September? And as I sat over there, I was just reliving it because it was a strange process. But here's what I didn't have. I didn't have any claim against my client. I didn't have any. That makes him a relief defendant, so that's okay. Let's put that to the side. I mean, you had to – we need an answer about what you needed to know that you didn't yet know as to whether the loan was legitimate. I needed to understand what the government's claim was in terms of why that loan was illegitimate or why it could be invalidated. I had gone through contract law and briefed it to a fairly well for the court in terms of – I thought his argument was this wasn't my holding proceeds. This was a legitimate $5 million loan that was made to me, and this document memorialized my legal obligations under the loan. Exactly. But the problem that the court solved with that was there were many factors. I think the court cited seven of them in finding it was a sham, but one of which was that the money actually was expensed on the books of 2 Pacific as some sort of an uncategorized expense. It wasn't shown as a loan receivable, and the note was to Zhu personally rather than to 2 Pacific, the source of the funds. And there were five other factors, including that damaging email in which your client basically said we need to make your assets seem less, which he claims was for tax purposes. But the court discredited that and said, no, this is motive to hide things from the government. And obviously our position was that's completely nonsensical. Why would you bring $5 million in from an offshore entity if that were what this was all about to the country? It doesn't take a great imagination to imagine money laundering so that the money was then going to go to Africa for whatever business ventures Zhu and Messina were contemplating at the time. To me, that's just another way of hiding if that was the true motivation for behind the $5 million. And yet the evidence showed a business relationship, a loan document, immediate disbursement. The one thing that was really clear here is Vince Messina was no puppet to Zhu. Whatever their issue was, that was from the moment of the loan agreement treated by Messina as a loan. Well, if that were the case, why did he lie to them and not return the money and instead disperse the funds after Zhu told him to return it? That's very non-puppetish. He was not acting. It was not a sham in any normal sense of this is Zhu's money that he's hiding. So are you arguing it's clear error for the district court to find that it was a sham? The district court made a fact finding this wasn't a real loan. I mean, you're disputing that, but how would we as an appellate court say that it was clear error? And again, that's why I keep going back to the law. When that sham idea becomes a way to invalidate a transaction, it is malleable, it's amorphous, it has no elements, it has no guts. If that were the standard, you could just write out a loan document in any case and that would be the end of the matter, wouldn't it? No, because then we have all kinds of – your honors were asking what would have otherwise happened if the court had not decided that it could just go forward in a relief proceeding and adjudicate this. We had two months of proceedings in front of Judge Snyder and then Judge Walker. The receiver initially was filing a fraudulent transfer claim. This is normal. I can litigate this. I know how to litigate that. It has claims that are real that have case law. And so that was being done. But they didn't quite get geared up to do that. At that point, the judge – this was before Judge Snyder, before Judge Walker – said to the SEC, all right, I guess you're going to do your adversarial proceeding just like they did against any number of other recipients of funds. And there were claims that could be defended. I think the concept of relief defendants, period. But our court has recognized that there is such a proceeding, so we're bound by that as a three-judge panel, aren't we? No. No, I love the concept, but I believe – But it will be eliminated if everyone can just write a little loan agreement. This is Judge Faber's point. I mean, as soon as – your argument is you can defeat any relief defendant proceeding as soon as you have any colorable notion of a basis for a claim to the money, right? I look at it from the other point of view, which is this court said that these truncated proceedings are permissible – and this is Colello that I'm quoting – because of the fact that the individuals who are holding the funds are mere custodians, not real parties in interest. Right, but the district court here found your client was just a custodian because the loan was a sham. By leapfrogging over this, yes, you can always find that you don't have a legitimate right by going on to the merits of it and then coming back and saying, you know what, you didn't have a legitimate right in the first place. The question is, is that how the issue of the legitimacy of the claim is supposed to be adjudicated? How else would you have the court determine it? As I just – To file a separate action? That's how it's done. And what would that action be denominated? There were two proceedings that were being discussed. The SEC filed any number of actions against other recipients of funds in order to recover those funds in this case. It's simple adversarial proceedings. Nothing fancy. I guess from a due process standpoint, how would that have been any different than what the district court pursued here? There would have been discovery. At some point there would have been a trial or summary judgment as a result of what the discovery showed, and all that happened here. But I would have had causes of action, elements, claims to defend. But do you know what the elements of the relief defendant claim is? We said we laid them out in Coelho. I was defending against an idea. I was defending against an idea that Judge Walker clearly embraced, that there was something wrong with this picture. If you analyze that transaction any other way, consistent with law. There was something wrong with the picture, too, based on the factual record that was adduced at the hearing. This factual record shows, under California law, a loan transaction that could be invalidated under California law,  What was the consideration that Mr. Messina provided to Mr. Zhu for the $5 million loan? According to California law, which is in my briefs. According to the evidence in the case, what was the consideration? As a matter of fact, what value did Mr. Messina give? The promissory note situation, which is addressed in my brief, is the interest. It was a non-recourse loan that was secured by nothing. No. No property, and other than no legal obligation, only what your client described as a moral obligation. That doesn't sound to me to be an enforceable contract under California law. Actually, we've got in the cases the exact same pattern that's happened, where it is enforceable. We're not reinventing the wheel here. There's California law. Counsel, I think we're going round and round, and I've let you go 10 minutes over. So the case just argued is submitted, and we'll give you an answer as soon as we can. We are adjourned.
judges: Tallman, Friedland, Faber